UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  4/16/2025

JUSTIN KERKER,

                Plaintiff,

-against-

BMDC CONSTRUCTION LIMITED, et al.,

                Defendants.

21-CV-9277 (PGG) (BCM)

**REPORT AND RECOMMENDATION
TO THE HON. PAUL G. GARDEPHE**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff Justin Kerker brought this action pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, N.Y. Labor Law (NYLL) § 190 *et seq.*, and the common law of New York, seeking unpaid wages and related relief, after defendants agreed to pay him an annual salary of $175,000 but actually paid him only a fraction of what he was owed during his 30 weeks of employment. On October 20, 2022, the Honorable Paul G. Gardephe, United States District Judge, entered an order of default against all defendants, *see* Default Order (Dkt. 37), and referred the matter to me for an inquest into damages. (Dkt. 38.) For the reasons that follow, plaintiff should be awarded damages on his common law breach of contract claim in the amount of $98,443.07, plus prejudgment interest at the rate of $24.27 per day, from November 17, 2019 to the date of entry of judgment, and post-judgment interest at the federal rate.

## I.     BACKGROUND

### A.    Factual Allegations

From August 5, 2019, to March 1, 2020, plaintiff was employed as Chief Compliance Officer and Controller of defendants BMDC Construction Limited and BMDC Construction I LLC, both of which were commercial construction companies owned by defendant Ben Mullen. Compl. ¶¶ 1, 9, 14, 19, 28. Plaintiff was employed pursuant to a written offer letter, which he received from defendants on July 22, 2019. *Id.* ¶ 30. The offer letter stated that plaintiff would

earn a yearly salary of $175,000 (in addition to a yearly bonus) and that his employers would "reimburse various expenses" and provide plaintiff with a cell phone and laptop. *Id.* ¶ 32. At the time plaintiff was hired, defendants informed him that he would be paid his salary bi-weekly. *Id*. ¶ 33. However, over his 30 weeks of employment, plaintiff was paid a total of only $15,750, in three payments – $1,750 on October 11, 2019; $5,000 on October 25, 2019; and $9,000 on January 14, 2020. *Id.* ¶ 35. Moreover, defendants failed to reimburse plaintiff for the agreed-upon expenses, totaling $3,231.53. *Id.* ¶ 38. Defendant Mullen "frequently acknowledged that Plaintiff Kerker was owed significant amounts in salary, and assured him that the wages would be paid in full," *id.* ¶ 39, but defendants never made any payments beyond the $15,750 described above. *Id*. ¶ 40.

On August 20, 2021, plaintiff's counsel contacted defendants to convey that plaintiff intended to file a lawsuit. Compl. ¶ 45. The parties then began settlement negotiations. *Id*. ¶ 46. On September 10, 2021, the parties "confirmed via various email communications that there was an agreement on the settlement amount and the date by which it would be paid." *Id.* ¶ 47. The amount was $100,000, to be paid by November 15, 2021. *Id.* The parties then "reached an agreement on the amount of the settlement payment, when the payment would be made, and how the payment was to be made, among other material terms," after which they "solidified their understanding in a formal written settlement agreement." *Id.* ¶¶ 49-50. On October 15, 2021, plaintiff provided defendant "his signed version of the settlement agreement." *Id*. ¶ 55. On October 22, 2021, plaintiff's counsel emailed defendants' counsel inquiring about the status of defendants' signature. *Id.* ¶ 57. Defendants' counsel responded, "'I informed my client so I anticipate receiving the signed agreement as per our conversation today.'" *Id.* However, defendants never signed the settlement agreement. *Id.* ¶ 58.

### B.    Procedural History

Plaintiff filed this action on November 9, 2021, alleging seven causes of action: (1) failure to pay the minimum wages to which he was entitled under the FLSA, *see* Compl. ¶¶ 59-66; (2) failure to pay the minimum wages to which he was entitled under the NYLL, *see id.* ¶¶ 67-76; (3) failure to pay him at his "regular rate of pay" for all hours worked, *see id.* ¶¶ 77-80[1]; (4) failure to reimburse his work-related expenses, in violation of the FLSA, *see id.* ¶¶ 81-87; (5) failure to reimburse his work-related expenses, in violation of NYLL §§ 193 and 198-(b)(2), *see id.* ¶¶ 88-93[2]; (6) failure to provide an accurate wage statement with each payment of wages, in violation of NYLL § 195.3, *see id.* ¶¶ 94-96[3]; and (7) breach of contract. *See id.* ¶¶ 97-109. In his seventh cause of action, plaintiff alleges that defendants breached both his 2019 offer letter, which was a "valid binding agreement," *id*. ¶¶ 98-101, and the 2021 settlement agreement that he signed but defendants did not. *Id*. ¶¶ 102-06. Plaintiff advises that his first six causes of action (brought under the FLSA and NYLL) "are being pled in the alternative" to his claim for breach of the 2021 settlement agreement. *Id*. ¶ 109.

Defendants BMDC Construction Limited and BMDC Construction I LLC were served with process on January 14, 2022, in accordance with Fed. R. Civ. P. 4(h), N.Y.C.P.L.R. (CPLR)

---

[1] In his Third Cause of Action, plaintiff relies solely on 12 N.Y.C.R.R. § 146-3.5(a), which is part of the New York Department of Labor's Hospitality Industry Wage Order. Compl. ¶ 78. As discussed below, *see* Part II(D)(1), *infra*, § 146-3.5(a) governs minimum hourly wages and related matters for employees of restaurants and hotels. *See* 12 N.Y.C.R.R. §§ 146-1.1, 146-3.1(a). Employees of commercial construction companies are not covered by the Hospitality Industry Wage Order.

[2] There is no § 198-(b)(2) in the NYLL. The Court presumes that plaintiff intended to cite § 198-b(2), the NYLL's anti-kickback provision. *See* Part II(D)(2), *infra*.

[3] There is no § 195.3 in the NYLL. The Court presumes that plaintiff intended to cite § 195(3), which requires employers to provide a written statement "with every payment of wages" that includes, *inter alia*, the dates worked during that pay period, the rate or rates of pay and the basis thereof, gross wages, deductions, allowances, and net wages. NYLL § 195(3).

§ 311(a)(1), and N.Y. Bus. Corp. Law § 306(b)(1), by delivery of the summons and complaint to the Secretary of State in Albany, New York. (Dkts. 12, 13.) Defendant Mullen was served on January 31, 2022, in accordance with Rule 4(h) and CPLR § 308(2), by delivery of the summons and complaint to Claire Brady, the General Agent and a "person of suitable age and discretion" at JRM Construction Management LLC, 242 West 36th Street, 11th Floor, New York, NY 10018, which was Mullen's "place of business." (Dkt. 14.)

On March 23, 2022 – no defendant having answered or appeared – the Clerk of Court issued certificates of default as to each defendant. (Dkts. 26-28.) On August 12, 2022, plaintiff sought a default judgment, submitting a proposed Order to Show Cause (Dkt. 29), supported by the declaration of attorney Douglas B. Lipsky (Dkt. 29-1); the Complaint (Dkt. 29-2); the affidavits of service and certificates of default as to all defendants (Dkt. 29-3 through Dkt. 29-6); and a proposed default judgment (Dkt. 29-7). On September 29, 2022, Judge Gardephe issued the Order to Show Cause (OSC) (Dkt. 30), directing the parties to appear for a show-cause hearing on October 13, 2022. On October 3, 2022, plaintiff served that OSC (together with the materials submitted in support thereof) on the individual defendant, by FedEx, at 242 West 36th Street, 11th Floor, New York, NY 10018. (Dkt. 31.) On October 11, 2022, plaintiff served the OSC (together with the materials submitted in support thereof) on the corporate defendants, by FedEx, at 2 Elizabeth Place, Armonk, NY 10504. (Dkts. 31, 33.) On October 12, 2022, the show-cause hearing was adjourned to October 20, 2022. (Dkt. 32.) After the hearing, which took place via telephone (*see* Dkt. 36), Judge Gardephe granted plaintiff's motion and entered the Default Order.

On October 24, 2022, I issued a Scheduling Order directing plaintiff to file his proposed findings of fact and conclusions of law by November 21, 2022, *see* Sched. Order (Dkt. 39) ¶ 1, and to serve his proposed findings, any supporting materials, and the Scheduling Order itself on

the defaulted defendants by mail. *Id.* ¶ 7. The Scheduling Order gave defendants until December 30, 2022 to serve their responses. *Id.* ¶ 8. Plaintiff submitted his proposed findings of fact and conclusions of law (Prop. Findings) (Dkt. 42) on November 23, 2022, along with the declaration of Justin Kerker (Kerker Decl.) (Dkt. 43), which in turn attached plaintiff's offer letter (Offer Ltr.) (Dkt. 43-1), as well as receipts for various expenses incurred by plaintiff (Receipts) (Dkt. 43-2). Additionally, plaintiff submitted a declaration from attorney Lipsky (Dkt. 44), attaching counsel's time and expense records. (Dkts. 44-1, 44-2.)

Plaintiff served his inquest materials on defendants by mail. (Dkt. 46.) Defendants did not file any response.

### C.    Proposed Findings

In his inquest submissions, plaintiff seeks damages solely under the NYLL and its implementing regulations. *See* Prop. Findings at 14 n.32 ("While Plaintiff Kerker's Complaint contains FLSA and Labor Law minimum wage claims and a breach of contract claim, Plaintiff Kerker does not seek to recover under those claims here, as the damages to be awarded are duplicative of the Labor Law damages claimed above.") Specifically, plaintiff presses his Third Cause of Action, for failure to pay him at his "regular rate of pay" for every hour worked; his Fifth Cause of Action, for failure to reimburse his work-related expenses; and his Sixth Cause of Action, for failure to provide accurate wage statements. Plaintiff contends that his "regular rate of pay" was $3,365.38 per week ($175,000 ÷ 52), entitling him to $100,961.54 in wages for the 30 weeks that he worked between August 5, 2019 and March 1, 2020. *Id*. ¶ 16; *see also* Kerker Decl. ¶ 10 ("Since I worked from August 5, 2019 to March 1, 202[0] and had a $175,000 annual salary, I was entitled to $100,961.54 in salary for my employment period: $3,365.38 x 30 weeks."). Because he was only paid $15,750, *see* Prop. Findings ¶ 17; Kerker Decl. ¶ 11, plaintiff calculates that he is

entitled to the remaining $85,211.54 as unpaid wages at his "regular rate of pay." Prop. Findings ¶¶ 19, 62; Kerker Decl. ¶ 13. Plaintiff further asserts that he is owed $3,231.53 to reimburse him for the work-related expenses that he incurred while employed by defendants, Prop. Findings ¶ 21, 45, 62, and that he should be awarded $5,000 in statutory damages because defendants failed to provide him with an accurate wage statement with each payment of wages. *Id*. ¶¶ 46-47, 65. In addition to these sums, plaintiff seeks liquidated damages in the amount of 100% of his unpaid wages and unreimbursed expenses, amounting to $88,443.07, *id*. ¶¶ 48, 63; prejudgment interest at 9%, *id*. ¶ 51, 64; "post-judgment interest at 15%," pursuant to NYLL § 198(4), *id*. ¶¶ 52, 66[4]; and $16,126.44 in attorneys' fees and expenses. *Id*. ¶¶ 22, 27, 53.

## II.    ANALYSIS

### A.    Legal Standards

#### 1.    Determining Liability

Following a default, all well-pleaded factual allegations in the complaint as to liability are "deemed admitted." *S.E.C. v. Razmilovic*, 738 F.3d 14, 19 (2d Cir. 2013), *as amended*, (Nov. 26, 2013); *accord City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). However, a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants." *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 F. App'x 111, 113 (2d Cir. 2015) (summary order). The court must therefore determine "whether the allegations in a

---

[4] Section 198(4) does not prescribe a 15% post-judgment interest rate. Rather, it states that *if* a judgment awarded under the NYLL remains unpaid 90 days after issuance (or 90 days "after expiration of the time to appeal and no appeal is then pending, whichever is later"), *then* the total amount of judgment will automatically increase – once – by 15%. *See Hong v. Mommy's Jamaican Mkt. Corp.*, 2024 WL 1242507, at *1 (S.D.N.Y. Mar. 21, 2024) (describing the effect of NYLL § 198(4) as "an automatic but conditional 15% increase of the judgment"), *reconsideration denied,* 2024 WL 2214309 (S.D.N.Y. May 16, 2024).

complaint establish the defendants' liability as a matter of law." *Id.* (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)). If the well-pleaded factual allegations establish the defaulting party's liability, the only remaining issue is "whether [p]laintiff has provided adequate support for [the requested] relief[.]" *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

Conversely, if the well-pleaded factual allegations in the complaint fail to state a claim upon which relief can be granted, no damages can be awarded, even if the post-default inquest submissions supply the missing information. *See United States ex rel. Nat'l Dev. & Constr. Corp. v. U.S. Envtl. Universal Servs., Inc.*, 2014 WL 4652712, at *4 (S.D.N.Y. Sept. 2, 2014) ("'[i]t is the . . . [c]omplaint, not the inquest submissions, that establishes defendants' liability'") (quoting *Gutman v. Klein*, 2010 WL 4975593, at *10 (E.D.N.Y. Aug. 19, 2010)) (alterations in original); *J & J Sports Prods., Inc. v. Abdelraouf*, 2019 WL 457719, at *2 (E.D.N.Y. Feb. 5, 2019) ("It is the moving party's burden to demonstrate that it is entitled to recovery based on the factual allegations pleaded in the complaint.").

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ P. 54(c). Thus, "[i]t is well-settled that a plaintiff cannot recover damages against a defaulted defendant for claims never alleged in its pleading." *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2018 WL 4760345, at *1 (S.D.N.Y. Sept. 28, 2018); *see also Sudilovskiy v. City WAV Corp.*, 2022 WL 4586307, at *4 (E.D.N.Y. Sept. 29, 2022) (plaintiffs "cannot recover unlawful-deduction damages in connection with a default judgment" after failing to allege such a claim in their pleading); *Chadha v. Chadha*, 2020 WL 1031385, at *8 (E.D.N.Y. Mar. 2, 2020) ("Since Plaintiffs failed to plead any common law claim for misappropriation of trade secrets, they are not entitled to any damages arising from such a claim."),

*adopted,* 2020 WL 5228812 (E.D.N.Y. Sept. 2, 2020); *U.S. ex rel. Nat. Dev. & Const. Corp. v. U.S. Env't Universal Servs., Inc.*, 2014 WL 4652712, at *4 (S.D.N.Y. Sept. 2, 2014) ("Because [i]t is the . . . [c]omplaint, not the inquest submissions, that establishes defendants' liability, the Court may not award damages against USEUS and Palonia based upon a Miller Act claim" that was not pled) (internal quotation marks and citations omitted).

### 2. Determining Damages

Although the Court must accept all well-pleaded facts as true when determining liability, it need not – and indeed cannot – rely on the allegations in plaintiff's complaint to establish his damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Rather, plaintiff must substantiate his claimed damages with "admissible, authenticated evidence," *McLaughlin v. Barron*, 2018 WL 1872535, at *2 (S.D.N.Y. Jan. 24, 2018), *adopted*, 2018 WL 993627 (S.D.N.Y. Feb. 20, 2018), and that evidence must be sufficient to "ascertain the amount of damages with reasonable certainty." *Credit Lyonnais*, 183 F.3d at 155; *see also House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("[T]here must be a basis upon which the court may establish damages with reasonable certainty.").

Where, as here, the defendants have failed to produce any employment records, the court may credit the plaintiff's "recollections regarding [his] hours and pay in conducting its inquest." *Coley v. Vannguard Urb. Improvement Ass'n, Inc.*, 2018 WL 1513628, at *7 (E.D.N.Y. Mar. 27, 2018), *as amended*, (Mar. 29, 2018). However, "the Court must ensure that [p]laintiffs' approximations and estimates are reasonable and appropriate." *Id.*; *see also Jemine v. Dennis*, 901 F. Supp. 2d 365, 378 (E.D.N.Y. 2012) (finding that plaintiffs' method of estimating hours worked,

by averaging the hours listed in the available payroll records with the hours recalled and described in plaintiffs' declarations, was reasonable where defendants failed to maintain adequate records).

Regardless of how many valid claims he pleads, "[a] plaintiff may not recover twice for the same injury." *Phelan v. Loc. 305 of United Ass'n of Journeymen, & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada*, 973 F.2d 1050, 1063 (2d Cir. 1992); *see also Bender v. City of New York*, 78 F.3d 787, 793 (2d Cir. 1996) ("A basic principle of compensatory damages is that an injury can be compensated only once. If two causes of action provide a legal theory for compensating one injury, only one recovery may be obtained.") (citations omitted). Thus, in wage and hour litigation, while a plaintiff is entitled to sue under both the FLSA and the NYLL, he may "not recover twice" for the same underpayment or other violation. *Gonzalez Mercedes v. Tito Transmission Corp.*, 2018 WL 7291452, at *5 (S.D.N.Y. Dec. 6, 2018) (quoting *Cao v. Wu Liang Ye Lexington Rest. Inc.*, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010)). Rather, plaintiff "may recover under the statute which provides the greatest amount of damages." *Id.* (quoting *Wicaksono v. XYZ 48 Corp.*, 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), *adopted*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011)).

### B.    Jurisdiction and Venue

I am satisfied that this Court has subject matter jurisdiction over plaintiff's claims. Because plaintiff sues under a federal statute – the FLSA – subject matter jurisdiction is properly based on 28 U.S.C. § 1331. The Court may exercise supplemental jurisdiction over his state law claims, which arise out of the same facts and circumstances, pursuant to 28 U.S.C. § 1367.

I am also satisfied as to personal jurisdiction over the defendants, which is "a necessary prerequisite to entry of a default judgment." *Reilly v. Plot Commerce*, 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016) (quoting *Sheldon v. Plot Commerce*, 2016 WL 5107072, at *6 (E.D.N.Y.

Aug. 26, 2016), *adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016)). Defendants were properly served with process, but failed to answer or otherwise respond, thereby waiving any argument regarding the Court's personal jurisdiction over them. *See* Fed. R. Civ. P. 12(h)(1)(B); *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 62 (2d Cir. 1999).

### C.    Statute of Limitations

The statute of limitations under the FLSA is two years, *see* 29 U.S.C. § 255(a), unless the violations were "willful," in which case the limitations period increases to three years. *See Mondragon v. Keff*, 2019 WL 2551536, at *10 (S.D.N.Y May 31, 2019) *adopted*, 2019 WL 2544666 (S.D.N.Y June 20, 2019) (citation committed); *see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 129 (1988). A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited[.]" *McLaughlin*, 486 U.S. at 133. In this case, plaintiffs allege willfulness generally, with no supporting facts. *See* Compl. ¶¶ 2, 3, 65, 75, 85, 95. However, "a defendant's default, in itself, may suffice to support a finding of willfulness." *Gonzalez Mercedes*, 2018 WL 7291452, at *4 (quoting *Santillan v. Henao*, 822 F. Supp. 2d 284, 297 (E.D.N.Y. 2011)), *adopted sub nom. Mercedes v. Tito Transmission Corp.*, 2019 WL 102007 (S.D.N.Y. Jan. 4, 2019). The statute of limitations for plaintiff's FLSA claims is thus three years. The statute of limitations under the NYLL is six years, regardless of willfulness. *See* NYLL § 198(3). Plaintiff filed this action on November 9, 2021, less than three years after he commenced working for defendants on August 5, 2019. Accordingly, all of his FLSA and NYLL claims are timely.

Under New York law, the statute of limitations for a breach of contract claim is six years. *See* CPLR § 213(2). Thus, both branches of plaintiff's breach of contract claim are also timely.

### D.    Liability

As noted above, plaintiff seeks damages under the NYLL, explaining that any damages that could be awarded under his other claims would be "duplicative" of his NYLL damages. Prop. Findings at 14 n.32. Consequently, in considering whether plaintiff has stated a cause of action upon which damages may be awarded, I begin with his third, fifth, and sixth causes of action, all pleaded under the NYLL or the regulations promulgated thereunder by the New York Department of Labor (DOL).

### 1.    Payment of "Regular Rate of Pay" (Third Cause of Action)

In his Third Cause of Action, labeled "Failure to Pay Regular Rate of Pay Under the New York Labor Law," plaintiff alleges that defendants failed to pay him "at his regular rate of pay for every hour of work," relying solely on 12 N.Y.C.R.R. § 146-3.5(a). Compl. ¶ 78. Plaintiff cannot recover under § 146-3.5(a), because it applies only to hospitality industry employees. *See Orozco v. Fresh Direct, LLC*, 2016 WL 5416510, at *4 (S.D.N.Y. Sept. 27, 2016) ("The Hospitality Industry Wage Order is clearly directed specifically to the hospitality industry."); *Jihui Zhang v. XYZ Limousine, Inc.*, 2019 WL 1220310, at *10 (E.D.N.Y. Mar. 15, 2019) ("Since Defendants are decidedly not in the 'hospitality' industry, Count X [for breach of 12 N.Y.C.R.R. § 146-1.19(a), governing recordkeeping in the hospitality industry] cannot survive."). Moreover, even for hospitality industry workers, § 146-3.5 does not create a substantive cause of action; it merely instructs employers (and courts) to calculate the employee's "regular rate of pay" by "dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of

40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5(b).[5]

In his Proposed Findings, plaintiff does not mention 12 N.Y.C.R.R. § 146-3.5(a). Instead, he now asserts that he is "entitled to his unpaid wages under N.Y. Lab. Law § 1981(1)." Prop. Findings ¶ 44.[6] He then calculates those unpaid wages to be $85,211.54, reasoning that since his annual salary was $175,000 (or $3,365.38 per week), his pro-rated salary for the 30 weeks he worked was $100,961.54, of which he was only paid $15,750. Prop. Findings ¶¶ 16-17, 19. However, plaintiff cannot recover damages after default under NYLL § 198(1-a), because he made no effort to plead a claim under § 198(1-a) in his Complaint. *See* Fed. R. Civ. P. 54(c); *Joint Stock Co. Channel One Russia Worldwide*, 2018 WL 4760345, at *1. Moreover, the consensus view within this district is that NYLL § 198 "is not a 'substantive provision' but one that addresses procedural matters collateral to liability such as limitations periods and damages." *Contrera v. Langer*, 314 F. Supp. 3d 562, 568 (S.D.N.Y. 2018). Thus, § 198(1-a) does not provide an employee with a cause of action to recover unpaid wages at a contractually agreed-upon rate higher than the

---

[5] The corresponding regulation within the DOL's Miscellaneous Industries and Occupations Wage Order states: "The term *regular rate* shall mean the amount that the employee is regularly paid for each hour of work. When an employee is paid on a piece work basis, salary, or any basis other than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings." 12 N.Y.C.R.R. § 142-2.16. In this case, plaintiff states that he worked for defendants for approximately 30 weeks, *see* Compl. ¶ 1; Kerker Decl. ¶¶ 1, 10, but has never disclosed how many hours per week he worked. It is therefore not possible to calculate his regular hourly wage rate in accordance with § 142-2.16.

[6] There is no § 1981(1) within the NYLL. The Court presumes that plaintiff intended to cite § 198(1-a), which states, in relevant part: "In any action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due." NYLL § 198(1-a).

minimum wage. *Id.* at 570 (collecting cases); *accord Jensen v. AR Glob. Invs., LLC*, 2020 WL 1322584, at *5-6 (S.D.N.Y. Mar. 20, 2020) ("Plaintiff is thus not entitled to relief under Section 198 unless he can show that Defendants violated another section of Article 6"); *Iqbal v. Teva Pharms. USA, Inc.*, 2017 WL 6729190, at *8 (S.D.N.Y. Dec. 28, 2017) (§ 198(1-a) "does not apply to common-law breach of contract claims"), *aff'd*, 753 F. App'x 50 (2d Cir. 2018); *Fallman v. Hotel Insider Ltd*, 2016 WL 316378, at *8 (S.D.N.Y. Jan. 15, 2016) (dismissing purported NYLL § 198 claim where plaintiff "only alleges a breach of his employment contract with [defendant] and does not allege a substantive violation of any provision of Article 6 of the New York Labor Law").[7]

Since plaintiff has not stated any cause of action under the NYLL or its enabling regulations that could entitle him to payment at the rate of $3,365.38 per week, no damages should be awarded on his Third Cause of Action.

### 2. Failure to Reimburse under the NYLL (Fifth Cause of Action)

In his Fifth Cause of Action, plaintiff seeks damages for defendants' failure to reimburse him for "the cost of his work-related expenses, including [his] monthly MTA Metro-North ticket, [the] agreed upon portion of Plaintiff Kerker's personal cellphone bill as he used this phone for work, and fees related to [a] notary exam, application, and stamp." Compl. ¶ 89. Plaintiff alleges

---

[7] "Where a non-exempt employee has an agreement with his or her employer to be paid at a rate greater than the minimum wage, several courts have found that the failure to pay the promised rate is a violation of NYLL § 191, entitling the employee to damages under NYLL § 198." *Ferreira v. Brooklyn's Constructions & Desings Inc.*, 2024 WL 5386542, at *11 (E.D.N.Y. Mar. 15, 2024) (quoting *Cavalotti v. Daddyo's BBQ, Inc.*, 2018 WL 5456654, at *13 (E.D.N.Y. Sept. 8, 2018), *adopted by text order* (E.D.N.Y. Sept. 25, 2018)); *see also Goldberg v. Jacquet*, 667 F. App'x 313, 314 n.1 (2d Cir. 2016) (stating, in *dicta*, that "[w]holesale withholding of wages is covered by NYLL § 191"); *but see Frost v. Lentex Co., LLC*, 2022 WL 17968058, at *10 (S.D.N.Y. Dec. 27, 2022) ("Section 191 does not apply to claims for non-payment of wages."). In this case, plaintiff has never so much as mentioned NYLL § 191. Consequently, no damages can be awarded, post-default, under that statute.

that defendants' failure to reimburse these expenses constitutes a violation of NYLL §§ 193 and 198-(b)(2),[8] and that by failing to reimburse him, defendants "caused his net wages to fall below New York's statutory minimum wage." *Id.* ¶¶ 91-92.

NYLL § 193 prohibits an employer from making "any deduction from the wages of an employee," subject to enumerated exceptions. The courts have interpreted § 193 to require employers to compensate employees for the cost of their uniforms and "tools of the trade," but only if those costs effectively reduce the employees' wages below the statutory minimum. Conversely, "[b]oth the FLSA and NYLL allow employers to shift the cost of business expenses to the employee as long as the expenses do not reduce the employee's wage below the minimum wage." *Aquino v. Uber Techs., Inc.*, 671 F. Supp. 3d 338, 349 (S.D.N.Y. 2023); *see also*, *e.g.*, *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 507 (S.D.N.Y. 2013) (plaintiff's "conclusory allegations that he was never reimbursed for alleged business expenses, without any allegation as to the cost of these expenses or how they remove his salary outside of minimum wage requirements," failed to state a claim under NYLL § 193).

Here, as in *Oram*, plaintiff alleges in conclusory terms that defendants' failure to reimburse him for "work-related" expenses caused his wages to drop below the legal minimum, Compl. ¶ 92, but fails to allege the supporting facts necessary to state a plausible claim under NYLL § 193. For

---

[8] Section 198-b(2) states, in relevant part: "Whenever any employee who is engaged to perform labor shall be promised an agreed rate of wages for his or her services, be such promise in writing or oral, . . . it shall be unlawful for any person, either for that person or any other person, to request, demand, or receive, either before or after such employee is engaged, a return, donation or contribution of any part or all of said employee's wages, salary, supplements, or other thing of value, upon the statement, representation, or understanding that failure to comply with such request or demand will prevent such employee from procuring or retaining employment." Even if plaintiff had alleged facts constituting an unlawful kickback arrangement, he could not recover damages pursuant to § 198-b(2) because there is no private right of action under that provision of the NYLL. *Konkur v. Utica Acad. of Sci. Charter Sch.*, 38 N.Y.3d 38, 44-45, 185 N.E.3d 483, 488 (2022).

example, the Complaint does not disclose how many hours per week plaintiff worked.[9] Nor does it state facts demonstrating that – for example – plaintiff's commuter train ticket qualified as an expense "specifically required for the performance of the employer's particular work." *Hernandez*, 2016 WL 3248493, at *30 (quoting *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 476 (S.D.N.Y. 2015)).[10] Once again, therefore, I conclude that plaintiff has failed to state a claim under the NYLL, and consequently is not entitled to damages after default on his Fifth Cause of Action.

### 3. Failure to Provide Accurate Wage Statements (Sixth Cause of Action)

In his Sixth Cause of Action, plaintiff seeks statutory damages for defendants' failure to provide accurate wage statements with each payment of wages. Compl. ¶¶ 94-96. The Wage Theft Prevention Act (WTPA), now part of the NYLL, requires employers to provide a written statement "with every payment of wages" that includes, *inter alia*, the dates worked during that pay period, the rate or rates of pay and the basis thereof, gross wages, deductions, allowances, and net wages.

---

[9] If plaintiff worked 40 hours per week for 30 weeks, in return for total compensation of $15,750, his regular hourly rate would have been $13.13, which was below the applicable NYLL minimum wage. *See* NYLL § 652(1)(a)(ii) (setting the minimum wage for small employers in New York City at $13.50 per hour on and after December 31, 2018, and $15 per hour on and after December 31, 2019). Thus, any deduction from his wages for items "specifically required for the performance of the employer's particular work," *Hernandez*, 2016 WL 3248493, at *30 (S.D.N.Y. June 9, 2016) (internal quotation marks and citations omitted), would entitle him to recompense. *See Martinez v. Finger Mgmt. Corp.*, 2024 WL 2114330, at *2 (S.D.N.Y. May 10, 2024) (holding that a janitor who was paid below the "minimum janitor rate" required by regulation stated a claim under NYLL § 193 when he alleged that he was required to "spend [his] own money on work-related expenses, including tools of the trade to complete mandated work, without reimbursement"). But if plaintiff worked 30 hours per week, his regular hourly rate would have been $17.50, which was well above the then-applicable minimum wage, requiring the Court to look closely at both the amount of the unreimbursed expenses and nature of those expenses to determine if they were actionable under NYLL § 193.

[10] Nothing in the NYLL requires the employer to pay the cost of commuting to and from work, even for minimum-wage employees. *See Aquino*, 671 F. Supp. 3d at 350 ("[C]ommuting expenses between home and a business location are not deductible for tax purposes and are not considered business expenses for FLSA and NYLL purposes.") (collecting cases); *accord Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 298-300 (S.D.N.Y. 2019).

NYLL § 195(3).[11] An employee may recover statutory damages of $250 for each workday that his employer failed to provide the wage statement required by § 195(3), not to exceed damages of $5,000 for each violation. NYLL § 198(1-d). Here, plaintiff seeks $5,000 in statutory damages. Prop. Findings ¶ 47.

In federal court, however, a plaintiff may not automatically collect a statutory penalty upon proof of a statutory violation. To establish standing under the "cases and controversies" clause, *see* U.S. Const. art. III § 2, a plaintiff must demonstrate that she suffered a "concrete and particularized injury" as a result of the violation. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *see also id*. at 426 (because the existence of a statutory prohibition or obligation does not "simply enact an injury into existence," Article III standing "requires a concrete injury even in the context of a statutory violation") (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). Thus, as the Second Circuit recently explained, a plaintiff suing under the WTPA "cannot rely on technical violations of the Labor Law but must allege actual injuries suffered as a result of the alleged wage notice and wage statement violations." *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 305 (2d Cir. 2024) (cleaned up). "[U]nless the plaintiff-employee can show that he or she . . . plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided, the plaintiff-employee has not established a concrete injury-in-fact sufficient to confer standing to seek statutory damages under § 195." *Id*. at 308; *see also Neor v. Acacia Network, Inc*., 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023) (dismissing WTPA claims where the complaint did not "allege any harm stemming from a lack of accurate wage notices or statements").

---

[11] The WTPA also requires the employer to furnish each employee, at the time of hire, with a notice spelling out "the rate or rates of pay and basis thereof," as well as information concerning allowances, supplements, and related matters. NYLL § 195(1). Plaintiff did not plead a wage notice claim under § 195(1).

In this case, although plaintiff alleges that defendants never provided accurate wage statements, Compl. ¶ 44, he has failed to allege any facts showing that the lack of accurate statements confused him about the manner in which his pay was computed or caused any other "injury in fact." Consequently, plaintiff cannot recover the $5,000 in statutory damages he seeks under the WTPA. *See Guthrie*, 113 F.4th at 310 (plaintiff failed to establish Article III standing where he "identified potential harms that could result from an employer's failure to provide wage notices and wage statements," but did not allege that his employers' WTPA violations "caused him to suffer any of those harms"); *Neor*, 2023 WL 1797267, at *4 (plaintiffs failed to establish Article III standing where they did not allege any "plausible injury" flowing from employer's inaccurate statements); *Sanchez v. Ms. Wine Shop Inc*., 643 F. Supp. 3d 355, 373 (E.D.N.Y. Nov. 30, 2022) (rejecting plaintiff's claim for statutory damages under the WTPA on inquest after default because "the allegations of the [c]omplaint fail to establish a concrete injury resulting from [d]efendants' alleged failure to provide wage statements"); *Hernandez v. 99 Thai Playground LLC*, 2022 WL 18539303, at *7 (S.D.N.Y. Nov. 28, 2022) (same result, where plaintiff alleged "only a technical statutory violation [of the WTPA], and not a physical, monetary, or cognizable harm"), *adopted*, 2023 WL 1400626 (S.D.N.Y. Jan. 31, 2023); *Sudilovskiy*, 2022 WL 4586307, at *5 (same result, where the complaint was "devoid of any allegation that the wage underpayment would not have occurred, or would have been reduced, had plaintiffs received a proper wage notice or wage statements").

Because plaintiff failed to plead facts showing that he has standing to sue under NYLL § 195(3), no statutory damages should be awarded to him for defendants' failure to provide accurate wage statements.

#### 4. Breach of Contract (Seventh Cause of Action)

Because plaintiff cannot recover under his Third, Fifth, or Sixth Causes of Action,[12] I now consider whether he has adequately pleaded a claim for breach of contract that could support a damages award. In his Seventh Cause of Action, plaintiff alleges that defendants breached (i) his 2019 employment agreement (that is, his July 22, 2019 offer letter); and (ii) a settlement agreement that the parties negotiated in 2021 but that defendants never signed. Compl. ¶¶ 98, 102. I consider each alleged contract in turn.

##### a. Breach of Employment Agreement

"To state a claim for breach of contract under New York law, 'the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)). As to the employment contract that plaintiff entered into on July 22, 2019, I conclude that the Complaint states facts plausibly demonstrating all of the necessary elements.

As to the first element, plaintiff alleges that he "entered into a valid binding agreement by way of his offer of employment with Defendants to provide services as Chief Compliance Officer, Controller." Compl. ¶ 98. Additionally, he alleges the essential terms of the agreement, as set forth in the offer letter: that in exchange for his services as Chief Compliance Officer and Controller,

---

[12] Nor could he recover under his Second Cause of Action, for failure to pay the minimum wages required by the NYLL. As discussed in Part II(D)(2), *supra*, plaintiff has not disclosed how many hours per week he worked, making it impossible to determine whether he was paid below the applicable New York minimum wage. Plaintiff's First and Fourth Causes of Action, pleaded under the FLSA for failure to pay the federal minimum wage and failure to reimburse his work-related expenses, suffer from the same defects as his parallel NYLL claims. Moreover, the applicable federal minimum wage was (and is) $ 7.25 per hour, *see* 29 U.S.C. § 206(a)(1)(C), meaning that even if plaintiff worked 40 hours per week, for 30 weeks, for a total of $15,750, his hourly rate would have been well in excess of the applicable FLSA minimum wage.

"Defendants would pay Plaintiff Kerker a yearly salary of $175,000.00, pay him a yearly bonus, reimburse various expenses, and provide him with a cell phone and a laptop." *Id.* ¶ 32. As to the second element, plaintiff alleges that he "performed his duties and responsibilities pursuant to his offer of employment, and all of the conditions [that were] required to be performed were completed." *Id.* ¶ 99. As to the third element, plaintiff alleges that defendants failed to pay him the agreed-upon salary (except for $15,750) and failed to reimburse the agreed-upon expenses, *id.* ¶¶ 35, 38-39, thereby breaching the contract. *Id.* ¶ 101. He adds that the individual defendant, Mullen, "frequently acknowledged that Plaintiff Kerker was owed significant amounts in salary, and assured him that the wages would be paid in full." *Id.* ¶ 39. As to the fourth element, plaintiff alleges that he is still owed $85,211.54 in unpaid salary and 3,231.53 in unreimbursed expenses, *id.* ¶¶ 37-38, and thus that "[d]efendants' breaches have financially damaged" him. *Id.* ¶ 107. Moreover, defendants' default in this action "is an admission of these well-pleaded allegations." *Antus v. Frontrunner Techs. USA, Inc.*, 2025 WL 26109, at *6 (S.D.N.Y. Jan. 3, 2025) (in action for breach of contract and violation of NYLL against defaulted defendant employers, plaintiff "adequately pleaded the elements of the Contract Claim, *i.e.*, that she and Defendants entered into contracts pursuant to which Defendants were required but failed to pay her salary, resulting in damages").

I therefore conclude that plaintiff has adequately alleged a common-law claim for breach of his employment contract, for which damages may be awarded upon a proper showing.

### b.    Breach of Settlement Agreement

The Complaint fails, however, to state a viable claim for breach of the alleged 2021 settlement agreement. As to the first element – the formation of a contract between the parties – a plaintiff "must allege a 'meeting of the minds' and a 'manifestation of mutual assent' that is 'sufficiently definite to assure that the parties are truly in agreement with respect to all material

terms' as to form a binding, enforceable contract." *Kolmar Americas Inc. v. Mycone Dental Supply Co.*, 2021 WL 5054300, at \*5 (S.D.N.Y. Nov. 1, 2021) (quoting *Reliable Automatic Sprinkler Co. Inc. v. Sunbelt Grp. L.P.*, 472 F. Supp. 3d 64, 72 (S.D.N.Y. 2020)). Here, although plaintiff alleges in conclusory language that "the parties reached an agreement on the amount of the settlement payment, when the payment would be made, and how the payment was to be made, among other material terms," Compl. ¶ 49, he does not explain what those material terms were. Moreover, although he implies that the agreed-upon terms were incorporated into the written settlement agreement that he signed and forwarded to defendants, *see id.* ¶¶ 53-55, he has never submitted a copy of that document. *Id.* ¶ 106.[13] Thus, plaintiff has failed to allege a cognizable claim for breach of the 2021 settlement agreement. *See Goldblatt v. New York Inst. of Tech.*, 2020 WL 5027150, at \*7 (E.D.N.Y. Aug. 25, 2020) ("a complaint must allege the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated") (quoting *Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 312 (S.D.N.Y. 2014)) (internal quotation marks omitted).

Additionally, plaintiff concedes that the written settlement agreement he prepared and signed was never signed by defendants, *see* Compl. ¶ 58, nor performed by them, even in part. *Id.* ¶ 106. In these circumstances, courts in the Second Circuit consider four factors when evaluating whether the alleged agreement is enforceable: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to

___

[13] In his inquest materials, plaintiff submitted a copy of the 2019 offer letter, *see* Kerker Decl. Ex. A, but did not submit the unsigned 2021 settlement agreement, nor any of the settlement-related email traffic between the parties' attorneys.

writing." *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985); *accord Rubinstein v. Clark & Green, Inc.*, 395 F. App'x 786, 789 (2d Cir. 2010); *Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 549 (2d Cir. 1998)). "No single factor is decisive, but each provides significant guidance." *In re Lehman Bros. Holdings Inc.*, 739 F. App'x 55, 57 (2d Cir. 2018) (quoting *Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 322 (2d Cir. 1997)).

Here, the first *Winston* factor supports plaintiff, if only because he does not allege that any party expressly reserved the right not to be bound in the absence of a writing. The second *Winston* factor, however, favors defendants, in that plaintiff concedes that defendants failed to pay any part of "the negotiated settlement amount." Compl. ¶ 106.

"The third *Winston* factor examines whether the parties agreed on all material terms." *Doe v. Kogut*, 2017 WL 1287144, at *7 (S.D.N.Y. Apr. 6, 2017), *aff'd,* 759 F. App'x 77 (2d Cir. 2019); *see also Grgurev v. Licul*, 2016 WL 6652741, at *6 (S.D.N.Y. Nov. 10, 2016) ("courts analyzing this factor focus on whether the parties reached agreement with respect to all *material* terms"). This factor is difficult to evaluate because – as noted above – plaintiff alleges that "[u]ltimately, the parties reached an agreement on the amount of the settlement payment, when the payment would be made, and how the payment was to be made, among other material terms," Compl. ¶ 49; *see also id.* ¶ 53 (on October 15, 2021, defendants sent plaintiff's counsel "the last of the outstanding terms for the written settlement agreement"), but never states what those material terms were. Nor does he explain whether the material terms resolved on October 15, 2021, differed from the original agreement in principle, reached on September 10, 2021, that "a settlement amount of $100,000.00 [was] to be paid by November 15, 2021." *Id.* ¶ 47.

The fourth *Winston* factor – whether the agreement is of a type that is ordinarily committed to writing – weighs in favor of defendants. "Settlements of any claim are generally required to be

in writing or, at a minimum, made on the record in open court." *Ciaramella*, 131 F.3d at 326; *see also Winston*, 777 F.2d at 83 ("Where, as here, the parties are adversaries and the purpose of the agreement is to forestall litigation, prudence strongly suggests that their agreement be written in order to make it readily enforceable, and to avoid still further litigation.") Here, after plaintiff "provided Defendants his signed version of the settlement agreement, along with the necessary tax forms to effectuate counter-execution and payment," Compl. ¶ 55, defendants' retained counsel "communicated that Defendants signatures on the settlement agreement was forthcoming." *Id.* ¶ 56. When plaintiff's counsel asked defendants' counsel, on October 22, 2021, for the status of defendants' signatures, defendants' counsel again referenced a forthcoming signature, responding, "'I informed my client so I anticipate receiving the signed agreement as per our conversation today.'" *Id.* ¶ 57. These allegations suggest, if anything, that both plaintiff and defendants expected to be bound only by a *signed* settlement agreement.

Weighing all four *Winston* factors, and taking into account the "totality of the circumstances" as alleged by plaintiff, *Ciaramella*, 131 F.3d at 322, I conclude that plaintiff has not adequately alleged either that the parties were "truly in agreement with respect to all material terms" of the settlement, *Kolmar Americas*, 2021 WL 5054300, at *5, nor that they intended to be bound in the absence of a fully-executed written settlement agreement. Accordingly, I conclude that plaintiff has not adequately alleged a claim for breach of the 2021 settlement agreement.

### E.    Damages

#### 1.    Breach of Contract

"Under New York law, damages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003). "Under New York law, the

damages an employee is entitled to recover for breach of an employment agreement are the amount of wages and other benefits he would have received under the contract." *Burns v. Scott*, 635 F. Supp. 3d 258, 279 (S.D.N.Y. 2022) (cleaned up). The plaintiff in a breach of contract action "ordinarily has a duty to mitigate the damages that he incurs." *Tang Cap. Partners, LP v. BRC Inc.*, 2024 WL 4716315, at *36 (S.D.N.Y. Nov. 8, 2024). By virtue of their default, however, defendants cannot show that plaintiff failed to mitigate his damages. *See Antus*, 2025 WL 26109, at *7 ("While a plaintiff is ordinarily required to mitigate damages upon breach, the burden of proving a lack of diligent effort to mitigate damages is upon the defendant, which Defendants, by their default, have failed to do.") (cleaned up).

Plaintiff has submitted admissible evidence, in the form of his own sworn declaration and the attached documentary evidence, supporting his claim for damages for breach of his employment contract. In that declaration, plaintiff attests that on July 22, 2019, defendants made him a written offer of employment, "outlining my employment terms, including that I would receive an annual salary of $175,000, equaling a weekly salary of $3,365.38 ($175,000/52 weeks) and that Defendants would reimburse me for my monthly subway card and any 'expenses based on projects or client's needs.'" Kerker Decl. ¶ 7. Plaintiff attaches a copy of the offer letter, dated July 22, 2019. Offer Ltr. at 1. The letter provides, *inter alia*, the following:

> BMDC Construction is happy to extend to you the job of Chief Compliance Officer, Controller. By accepting this job offer you are eligible to receive the following beginning on your first day of work:
>
> Salary: $175,000 yearly.
>
> Reimbursable: Travel (monthly subway card), expenses based on projects or client's needs.
>
> Equipment: Cell phone; laptop.

*Id.* Although the signature line for defendant Mullen is blank, *id.*, the letter is on BMDC Construction letterhead and signed by plaintiff. Moreover, plaintiff attests that defendant Mullen "made these same representations to me before and after I signed the offer letter," including that "Defendants would reimburse my cellphone and transportation expenses." Kerker Decl. ¶ 7.

Plaintiff attests: "During my employment, I had a yearly salary of $175,000 and Defendants regularly told me that they would pay me this amount. But they never paid me this amount." Kerker Decl. ¶ 9. Plaintiff states that he was employed by defendants from August 5, 2019 to March 1, 2020 – 30 weeks – and was therefore entitled to $100,961.54 in salary during that period. *Id.* ¶ 10. He concedes that defendants paid him three times during his employment – $1,750 on October 11, 2019; $5,000 on October 25, 2019; and $9,000 on January 14, 2020, totaling $15,750, *id.* ¶ 11, but attests that, despite their promises, they never paid the remainder of his salary. *Id.* ¶ 9 Plaintiff calculates that defendants owe him $85,211.54 in unpaid wages – the difference between the $100,961.54 he earned and the $15,750 he received. *Id.* ¶ 13.

As to expenses, plaintiff attests that he incurred $3,231.53 in unreimbursed expenses, including $2,268.50 in monthly MTA Metro North tickets used to commute from Westchester to work; $135 to the Department of State for a notary application, exam, and stamp (required by his employer); and $828.03 to Verizon, as he was required to use his personal cell phone for work-related matters. Kerker Decl. ¶¶ 15-16.[14] Plaintiff explains that during his employment, he

---

[14] Plaintiff calculated this amount by deducting the portion of his monthly Verizon phone bill corresponding to his wife's phone, and charging defendants the remaining amount. Kerker Decl. ¶ 16; *see* Receipts at ECF pp. 7-25 (Verizon bills). It is unlikely that plaintiff would be able to recover all of these expenses under NYLL § 193, even if he had adequately pleaded the other elements of such a claim. *See* Part II(D)(2), *supra*. For purposes of his common-law breach of contract claim, however, plaintiff is entitled to reimbursement for all expenses that the employer agreed to pay for under the parties' contract, whether or not they would be reimbursable under the NYLL as "tools of the trade."

contemporaneously updated a spreadsheet to track his work-related expenses. *Id.* ¶ 16. He also attaches receipts and bills reflecting some of his requested expenses. *See* Receipts at ECF p. 2 (four Metro-North receipts, each totaling $322, dated August 5, 2019, September 3, 2019, October 1, 2019, and November 1, 2019); *id.* at ECF p. 3 (check dated August 29, 2019 for $60, addressed to "Department of State," for "Notary License"); *id.* at ECF pp. 4-6 (confirmation from the National Notary Association, dated September 25, 2019, for purchase of "NY Become Basic Package," totaling $60); *id.* at ECF pp. 7-25 (Verizon bills); *id.* at ECF p. 26 (spreadsheet entitled "Justin Kerker – BMDC Construction Schedule," listing expenses and salary owed from August 5, 2019 through February 28, 2020); *id.* at ECF p. 27 (unsigned expense report on BMDC Construction letterhead, totaling $1,774.12 for expenses from August 5, 2019 through November 1, 2019); *id.* at ECF p. 28 (unsigned expense report on BMDC letterhead, totaling $599.37 for expenses from November 15, 2019 through December 15, 2019).

I conclude that under plaintiff's employment contract, he was entitled to (i) the prorated amount of $100,961.54 in wages over his 30 weeks of employment, calculated based on his $175,000 annual salary; and (ii) reimbursement of work-related expenses in the amount of $3,231.53. Given that plaintiff was paid only $15,750 in wages during his employment, he is entitled to actual damages in the sum of $98,443.07 on his breach of contract claim.

## 2.    Prejudgment Interest

Plaintiff submits that he is also entitled to pre-judgment interest at 9% per annum, pursuant to CPLR §§ 5001(a) and 5004. Prop. Findings ¶ 51. Plaintiff is correct. "[U]nder New York law, 'a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right.'" *Foley v. Wilson*, 2020 WL 30338, at *5 (S.D.N.Y. Jan. 2, 2020) (quoting *United States Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991)); *see also* CPLR

§ 5001(a) ("Interest shall be recovered upon a sum awarded because of a breach of performance of a contract[.]"). CPLR § 5004 sets a prejudgment interest rate of 9% per annum, which is computed "on a simple interest basis." *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998). "Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." CPLR § 5001(b); *see also Marfia*, 147 F.3d at 91 ("New York law leaves to the discretion of the court the choice of whether to calculate prejudgment interest based upon the date when damages were incurred or 'a single reasonable intermediate date,' which can be used to simplify the calculation."). The median date of the period for which plaintiff is owed damages (August 5, 2019 through March 1, 2020) is November 17, 2019. Using the "single reasonable intermediate date" method, interest has been accruing since November 17, 2019 at the rate of $24.27 per day ($98,443.07 x .09/365), and will continue to accrue at that rate until judgment is entered.

### 3.    Attorneys' Fees and Costs

Plaintiff submits that he is entitled to $15,459.30 in attorneys' fees and $667.14 in expenses, pursuant to NYLL § 198(1-a). Prop. Findings ¶¶ 53, 66. Plaintiff has set out the hours worked, and rates charged, by the five individuals at Lipsky Lowe who worked on this action, including attorney Lipsky, two associates, and two paralegals. *Id*. ¶¶ 22-26. Plaintiff also submits that his attorneys have incurred expenses "for filing fee, process servers and FedEx'es." *Id*. ¶ 27.

NYLL § 198(1-a) does allow a successful NYLL plaintiff to recover his reasonable attorneys' fees and litigation expenses. However, plaintiff has not succeeded on any of his claims brought under the NYLL (or, for that matter, under the FLSA, which likewise permits a fee award to a prevailing plaintiff). Consequently, he is not entitled to attorneys' fees or costs under § 198(1-a), which does not "permit recovery . . . on a common-law contractual remuneration claim." *Gold*

*v. Am. Medical Alert Corp.*, 2015 WL 4887525, *2 (S.D.N.Y. Aug. 17, 2015) (quoting *Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.2d 457, 465, 626 N.E.2d 29, 34 (1993)); *accord Iqbal*, 2017 WL 6729190, at *8.

Although plaintiff has succeeded on his common-law breach of contract claim, the underlying contract – his 2019 offer letter – does not provide for an award of attorneys' fees or costs in the case of a breach. Accordingly, plaintiff is not entitled to such an award.

### 4.   Liquidated Damages

Plaintiff seeks $88,443.07 in liquidated damages, "equaling 100% of his compensatory damages." Prop. Findings ¶ 63. Once again, because plaintiff has not succeeded on any claim brought under the NYLL, he is not entitled to liquidated damages under NYLL § 198(1-a).

### 5.   Post-judgment Interest

Plaintiff submits that he is entitled to post-judgment interest at a rate of 15% pursuant to NYLL § 198(4). Prop. Findings. ¶ 52. As discussed above, *see* n.4, *supra*, plaintiff has misread § 198(4). Moreover, § 198(4) applies only to judgments entered for violations of the NYLL. Since plaintiff has not succeeded on any NYLL claim, his entitlement to post-judgment interest is governed entirely by 28 U.S.C. § 1961(a), which provides for such interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." *See Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Piccini MNM, Inc.*, 2021 WL 1791591, at *4 (S.D.N.Y. May 5, 2021) ("Post-judgment interest is mandatory for civil money judgments recovered in federal district court pursuant to 28 U.S.C. § 1961(a).") (citing *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004)).

### III.    CONCLUSION

For the reasons stated above, I recommend, respectfully, that plaintiff be awarded:

(i)      damages on his breach of contract claim only, in the amount of $98,443.07;

(ii)     prejudgment interest on his breach of contract claim in the amount of $24.27 per

day from November 17, 2019 to the date of entry of judgment; and

(iii)    post-judgment interest at the federal rate.

The Clerk of Court is respectfully directed to mail copies of this Report and

Recommendation to the defaulted defendants, addressed as follows:

**BMDC Construction Limited**
2 Elizabeth Place
Armonk, New York 10504

**BMDC Construction I LLC**
2 Elizabeth Place
Armonk, New York 10504

**Ben Mullen**
c/o JRM Construction Management
242 West 36th Street, 11th Floor
New York, New York 10018

Dated:  New York, New York
        April 16, 2025

**BARBARA MOSES**
**United States Magistrate Judge**

## <u>NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS</u>
## <u>TO THIS REPORT AND RECOMMENDATION</u>

The parties have 14 days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), unless they receive this Report and Recommendation solely by mail, in which case they have 17 days from the date on which it was mailed. *See* Fed. R. Civ. P. 6(a), 6(d). Any objections must be filed with the Clerk of the Court, addressed to the Hon. Paul G. Gardephe, and delivered to Judge Gardephe in accordance with his individual practices. Any request for an extension of the deadline to file objections must also be directed to Judge Gardephe. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018) (summary order); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).